IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| KEVIN P. SAMPLE, | |
|---|---|
| Petitioner, | No. 2:08-cv-00401-JWS |
| vs. | MEMORANDUM DECISION |
| D. K. SISTO, Warden, California State Prison, Solano, | |
| Respondent. | |

Petitioner Kevin P. Sample, a state prisoner appearing *pro se*, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Sample has also requested an evidentiary hearing. Sample is currently in the custody of the California Department of Corrections and Rehabilitation, and is incarcerated at the California State Prison, Solano.

I. BACKGROUND/PRIOR PROCEEDING

Sample was convicted after a jury trial in the Sacramento County Superior Court of first degree burglary (Cal. Penal Code § 459). After a separate court trial, the court found that Sample had suffered two prior convictions for serious or violent felonies. Sample was sentenced under the California three strikes law to an indeterminate prison term of 25 years to life.

Sample appealed his conviction to the California Court of Appeal, Third Appellate District, which affirmed his conviction in a reasoned unpublished decision.[1] The California Supreme Court summarily denied review without opinion or citation to authority on February 8, 2006.

On February 6, 2007, Sample filed a petition for habeas relief in the Sacramento County Court, which denied his petition in a reasoned decision. Sample then filed a petition for habeas relief in the California Court of Appeal, which summarily denied the petition without opinion or

---

[1] Accessible on WestLaw. 2005 WL 2816497 (Cal. App. 3 Dist.)

citation to authority. Sample's subsequent petition to the California Supreme Court was summarily denied without opinion or citation to authority on December 19, 2007. Sample timely filed his petition for relief in this Court on February 22, 2008.

## II. ISSUES RAISED/DEFENSES

In his petition Sample raises three grounds: (1) ineffective assistance of counsel in that counsel failed to (a) obtain a color copy of a photographic array used to identify Sample, (b) to object to the introduction of evidence, and (c) adequately investigate misconduct or malfeasance on the part of the investigating detective; (2) ineffective assistance of counsel for failing to properly challenge the victim's identification testimony; and (3) prosecutorial misconduct in eliciting the courtroom identification of Sample. Respondent has not pled any affirmative defenses.[2]

## III. STANDARD OF REVIEW

Sample's petition is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5] When a claim falls under the

---

[2] *See* Rules—Section 2254 Cases, Rule 5(b).

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412.

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

"unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable," "not just incorrect or erroneous."[6] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[7] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[8]

In applying this standard, this Court reviews the last reasoned decision by the state court.[9] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[10]

IV. DISCUSSION

Grounds 1 & 2: Ineffective Assistance of Counsel.

Sample provides a virtual smorgasbord of "deficiencies" in the performance by trial counsel. (1) Failure to obtain a full color copy of the photographic array, ostensibly "to examine for fault or other such reason that his photo was chosen" by the only eyewitness. (2) Failure to examine the photographic array, which together with the eyewitness's in-court identification, is the only evidence that links Sample to the crime. (3) Failure to object to the introduction of the eyewitness identification testimony. (4) Inadequate presentation of a *Pitchess* motion to establish corruption and misconduct on the part of an investigating detective.[11]

In responding to his arguments, the Sacramento County Superior Court held:

---

[6] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[7] *Schriro v. Landrigan*, 550 U.S. 465, ___, 127 S. Ct. 1933, 1939 (2007).

[8] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[9] *Ylst v. Nunnemaker*, 501 U.S. 797, 504 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[10] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[11] *People v. Pitchess*, 522 P.2d 305 (1974). A procedure under California law for obtaining the personnel files of law enforcement personnel concerning citizen complaints.

The petition for writ of habeas corpus has been filed and considered. It is DENIED.

Petitioner contends that he failed to receive effective assistance of counsel when he was convicted of burglary.

In evaluating a claim of ineffective assistance of counsel, the court applies a two-part test:

"[A] defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness ... under prevailing professional norms.'" (*In re Harris* (1993) 5 Cal.4th 813, 832-833, *citing Strickland v. Washington* (1984) 466 U.S. 668 and *People v. Pope* (1979) 23 Cal.3d 412; see *also In re Scott* (2003) 29 Cal.4th 783, 811-812.)

In applying the first part of the test, courts are directed to be highly deferential. A petitioner claiming ineffective assistance must overcome a presumption that, considering all of the circumstances, counsel's actions "might be considered sound trial strategy." (*Strickland, supra*, 466 U.S. at p. 689.)

In the second part of the *Strickland* test, a petitioner "must also show prejudice flowing from counsel's performance or lack thereof. [cites omitted] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [cites omitted]" (*Strickland, supra.* 466 U.S. at p. 689.)

Finally, courts are advised that it is frequently easier to resolve an ineffective assistance claim by looking first at the issue of prejudice; if none is established, then it will be unnecessary to consider counsel's performance. (*In re Fields* (1990) 51 Cal.3d 1063, 1077.)

To determine whether the admission of identification evidence violates a defendant's right to due process, a court considers (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*People v. Kennedy* (2005) 36 Cal. 4th 595, 608.)

The photo lineup in petitioner's case includes six mug shots of men of similar age and appearance to petitioner. He points out that not all of the subjects are looking at the camera, but this fact alone does not invalidate the identification. When the witness saw the burglar, she immediately began trying to memorize

facts about him.  She memorized his license plate, and in those circumstances could be expected to remember his face as well.  She was able to communicate her identification information to police immediately after the incident.  The appellate court agreed that the evidence was sufficient to support the identification. Petitioner's counsel, therefore, had no reason to object to the photo lineup and was not ineffective as to this matter.

        The manner in which the identification at trial occurred was unremarkable.  The witness also explained why the other man who was alleged to be burglar was not the man she saw.  Counsel would have been unable to change this testimony.

        Petitioner does not specify what objection counsel should have made to identification.  Misidentity was the theory of the defense case.  The jury, however, apparently believed other witnesses and did not believe petitioner.  Petitioner's counsel could not prevent this outcome and was not ineffective in this regard.

        Petitioner contends that the detective who investigated the case erred because she incorrectly reported the statement of petitioner's girlfriend.  The girlfriend had no first-hand knowledge of the burglary and was not with petitioner at the time that it occurred.  Petitioner does not explain how error by the detective affected the outcome of his case.

        Petitioner also contends that his attorney's failure to provide a sufficient declaration for his *Pitchess* motion was prejudicial.  Petitioner does not say how the motion would have assisted him.  In fact, failure to link the dispute to the defense theory of the case was one of the factors that led the appellate court to uphold the trial court's denial of the motion.

        In summary, petitioner has failed to show that counsel was ineffective.  In petitioner's case an eyewitness identified him, not another man, as the burglar.  That identification did not violate due process.  The jury was entitled to believe this witness and to disbelieve other testimony.

Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Sample must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[12]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[13]  Sample must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for

---

[12] 466 U.S. 668, 687 (1984).

[13] *Id*.

counsel's ineffectiveness, the result would have been different.[14]  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions. Indeed, the Supreme Court admonished in *Strickland*:[15]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

As noted by the Sacramento County Superior Court the defense asserted in this case was mistaken identity.[16]  Sample argues that the detective manipulated the photographic array and suggested to the eyewitness that she should identify Sample as the perpetrator and that, therefore, counsel was deficient in failing to investigate and challenge it.  In order to have prevailed on a challenge to the photographic array, counsel would have had to establish that the identification procedure was impermissibly or unduly suggestive under the totality of circumstances.[17]  Under California law, the burden is on the defendant to demonstrate the existence of an unreliable identification procedure.[18]  Nothing in what Sample describes as being "suggestive" indicates that the detective was attempting to have the witness specifically identify Sample; only that the

---

[14] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[15] 466 U.S. at 689 (internal citations and quotation marks omitted)

[16] This issue was addressed on the merits by the California Court of Appeal on direct appeal and the excerpt of its decision is set forth in the Appendix.

[17] *Neil v. Biggers*, 409 U.S. 188, 196 (1972); *People v. Cunningham*, 25 P.3d 519, 560 (Cal. 2001).

[18] *People v. Ochoa*, 966 P.2d 442, 477 (Cal. 1998).

detective was following standard police procedure to ensure that the person viewing the photographic array was certain that he or she was unable to identify any person in the array. Sample argues that the photographic array was "manipulated" as evidenced by: (1) only two (one of which is Sample) of the six subjects share the same hair and mustache color; (2) the same two men are looking straight at you, which tends to attract attention them; and (3) the photograph of Sample appears to be slightly enlarged, which also tends to draw attention to that photograph.

Sample's argument as to the inadmissibility of the eyewitness identification testimony is essentially based upon the mistaken premise that the photographic array lineup was constitutionally defective, which as noted above, it was not. There was no apparent basis upon which to object to the eyewitness testimony identifying Sample.[19] Counsel is not deficient for failing to raise a meritless objection. Sample confuses admissibility with credibility or reliability of the identification. All of the points argued by Sample go to credibility or the ability of the eyewitness to positively and accurately identify Sample as the perpetrator. The record indicates that trial counsel cross examined the eyewitness on her identification and in his closing argument pointed out those differences, discrepancies, or omissions between the description the witness gave in her call to 911, her identification of Sample's picture in the photographic array, and her in-court identification of Sample.

As for the alleged deficiency in presenting the *Pitchess* motion, the Sacramento County Superior Court properly held that Sample fails to show prejudice. It is still unclear how the outcome of this case might have differed. Sample argues two points with respect to the allegedly corrupt conduct of the detective: (1) manipulation of the photographic array; and (2) falsifying a report of the interview of Sample's live-in girl friend, Sue Cham.

As discussed above, even if the detective did manipulate the photographic array, it was not impermissibly or unduly suggestive. The detective's report indicated that Cham in her interview told the detective that she would have noted if the vehicle used in the burglary was not parked outside the apartment, and she did not notice that it was gone on the date of the burglary. At trial, the detective testified that her report accurately reflected what Cham had told her.

---

[19] *See Neil; Cunningham; Ochoa.*

Cham, in her testimony denied that she made that statement during the interview. Sample argues that this "proves" the detective lied in her report. Cham's testimony proves nothing unless it is believed. Obviously, as on the critical issue of Sample's alibi to which both Sample and Cham testified, the jury chose to believe the testimony of someone other than Cham. The record simply does not support Sample's conclusory allegations that the detective was corrupt, cheated or lied. Sample's argument is based upon conjecture, speculation, and unwarranted innuendo.

To the extent Sample contends that the failure of appellate counsel was deficient in failing to raise the issue of ineffective trial counsel with respect to the *Pitchess* motion on direct appeal, the Court finds that argument to be without merit. The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[20]

This Court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[21] Nor can this Court find that the Sacramento County Superior Court unreasonably applied the correct legal principle to the facts of Sample's case as required by *Lockyer–Williams*; i.e., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. In particular, Sample has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that counsel's deficiencies, to the extent they existed, prejudiced Sample's defense as required under *Strickland–Hill*. Sample is not entitled to relief on his first and second grounds.

Ground 3: Prosecutorial Misconduct.

Sample's allegation of prosecutorial misconduct is based upon the following testimony elicited from an eyewitness at trial by the prosecution.

Q. And do you recall when that was after November 24th, 2003?

---

[20] *See Jones v. Barnes*, 463 U.S. 745, 751–52 (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir.1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

[21] 28 U.S.C. § 2254(d).

A. In terms of timing?

Q. Yes.

A. I don't remember the exact date. I think it might have been in January.

Q. At the time you spoke with the detective. did -- were the events that you had witnessed still fresh in your mind?

A. Yes.

A. Yes.

Q. And were you given the opportunity to look at a photographic lineup?

A. Yes.

Q. And at the time that you looked at the photographic lineup, did you choose somebody while -- based upon your observations on November 24th, 2003?

A. Yes.

Q. And at that time, is that a true reflection of what you had seen on November 24th, 2003?

A. Yes

Q. Do you recognize the person sitting two people to my left?

A. Yes.

Q. And how do you recognize him?

A. He would be the person that I picked out of the photographs and the person that I saw at my studio.

Q. Would you say –

MS. MONTCRIEFF: I'm sorry, your honor, if the record could indicate that she identified the defendant in this case, Kevin Sample.

THE COURT: It shall.

Q (By Ms. Montcrieff) Does Mr. Sample look any different today than he did the day you saw him?

A. Yes.

Q. Can you tell us how he looks different?

A. He did not have any gel in his hair; his hair is back, much more clean shaven, much more polished.

Q. No mustache?

A. Correct, clean shaven.

Sample argues that by specifically pointing him out in the courtroom, the prosecutor's actions were unduly suggestive. Sample raised this issue in his state habeas proceedings. The Sacramento County Superior Court summarily rejected Sample's arguments stating simply: "The manner in which the identification at trial occurred was unremarkable."

"To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"[22] "To prevail on habeas review, [Sample] would have to show that the '[identification procedure] in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'"[23] Courtroom logistics, including the seating of the defendant, is itself somewhat suggestive.[24] The manner in which the prosecutor led up to what would otherwise be an essentially innocuous or neutral question made the context in which it was propounded somewhat suggestive, that alone does not constitute constitutional error. As noted above in the discussion of Sample's first two grounds, the identification procedure must be impermissibly or unduly suggestive under the totality of circumstances.[25] In this case, the record indicates the witness fully explained any differences between the appearance of Sample at the time she saw him, her identification of the photographic lineup, and his appearance at the time of trial. As the Sacramento County Superior Court noted, "[t]he witness also explained why the other man who was alleged to be burglar was not the man she saw." While the prosecutor could have phased her question in a less suggestive manner, *e.g.*, by asking the witness if she could point out the person she saw on that date without drawing specific attention to Sample, the manner in which the in-court identification occurred was not impermissibly or unduly suggestive. Nor can this Court say

---

[22] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004), quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

[23] *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995), quoting *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967).

[24] *Id.*

[25] *Neil v. Biggers, supra.*

that the conduct of the prosecutor so infected the trial with unfairness that Sample was denied due process.

The Court has also considered and rejects as meritless Sample's conclusory allegations that the prosecutor was corrupt and that she lacked "moral turpitude."

Based upon its review of the record before it, this Court cannot say that the decision of the Sacramento County Superior Court in denying Sample's habeas petition was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[26] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Sample is not entitled to relief under his third ground.

<u>Request for Evidentiary Hearing</u>.

An evidentiary hearing is required only if "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [Sample] guilty of the offense."[27] The Court's review of the record reveals that the factual basis of his claims have been fully developed in the State court proceedings. The suggested "expert examination" of the photographic array, even if admissible, would not establish that the photographic array was impermissibly or unduly suggestive. The photographic array itself constitutes the evidence. Accordingly, Sample has failed to establish a need for a further evidentiary hearing in this Court.

## V. CONCLUSION AND ORDER

Sample is not entitled to relief under any ground raised in the petition. Accordingly,

**IT IS THEREFORE ORDERED** that the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

---

[26] 28 U.S.C. § 2254(d).

[27] 28 U.S.C. § 2254(e)(2).

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a Certificate of Appealability.[28]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter judgment accordingly.

Dated:  March 9, 2009.

/s/ John W. Sedwick  
JOHN W. SEDWICK  
United States District Judge

---

[28] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).